# Exhibit F

# Isaiah Wilkins Declaration

ISAIAH WILKINS, ET AL.,

        PLAINTIFFS,

    v.

LLOYD J. AUSTIN, ET AL.,

        DEFENDANTS.

CIVIL ACTION NO. 1:22-cv-01272

**DECLARATION OF ISAIAH WILKINS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.**

I, Isaiah Wilkins, being of lawful age and competent to testify as to each fact below, make the following declaration based on my personal knowledge:

1. I am a 24-year-old, Black, cisgender, gay man, a former Georgia National Guard member, current member of the Minority Veterans of America ("MVA"), and an officer of the Georgia Department of Public Safety, serving within the Capital Police Division.

2. I wish to serve again in the United States Army. Were it not for the regulations barring accessions of people living with HIV, I would seek to join the Armed Services.

3. In 2015, at the age of 16, I earned my GED. The following year, in 2016, I joined the Georgia National Guard and enrolled at Georgia Military College ("GMC"), one of only five Military Junior Colleges in the United States. At GMC I was a part of the Corp of Cadets ("CDC"). As a part of the CDC, I served in multiple leadership positions at GMC with the highest being Sergeant Major in the Regimental Command. I was also awarded the Servant Leader Award for completing over 250 hours of community service. At the end of my two years there, I graduated with an Associate Degree of Science in Political Science.

4.	After GMC, on the recommendation of a mentor due to my high academic achievement at GMC, I applied to the United States Air Force Academy ("Air Force Academy") and the United States Military Academy at West Point ("West Point"). For the Air Force Academy, I received a congressional nomination from U.S. Representative Drew Ferguson. For West Point, I received an endorsement from my Commander, Captain Jeremiah Stafford of the Georgia National Guard. Upon learning I was accepted into the United States Military Academy Preparation School ("USMAPS") at West Point, I was overjoyed to have earned such a prestigious spot. There I would be able to train and prepare for matriculating into West Point.

5.	To facilitate my enrollment at USMAPS West Point, I voluntarily separated from the Georgia National Guard, and I signed a new contract with the Army Reserves, took the oath of enlistment, and mobilized on to active duty.

6.	As part of the routine entry process, I received a medical examination. This examination revealed for the first time that I was living with HIV. I was in shock when I heard the diagnosis. I couldn't sit still and was so overwhelmed that I had to step out of the room to collect myself. When I returned, the doctor explained that HIV was a treatable condition, and then I was promptly presented with a number of required administrative forms to fill out related to my new diagnosis and military policies.

7.	As I was subject to accessions medical standards and testing, an Entrance Physical Standards Board ("EPSBD") convened and recommended discharge based on my HIV diagnosis. Given that I had already been in service with the National Guard, I attempted to advocate for my retention while the Commandant was considering the EPSBD's recommendation. I spent a lot of time reviewing military policy as well as speaking to officers in my immediate chain of command. At one point, I spoke directly to the Commandant himself.

This situation lasted almost a year, during which I was not allowed to attend classes. Instead, I was given menial assignments at the school, such as working in the mail room, driving the Commandant around, leading any cadet in the process of leaving USMAPS, and various chore lists that any officer happened to have. Still, I stayed, hoping that I would be allowed to continue at USMAPS and to pursue my goal for a future in the U.S. Armed Services.

8.     Ultimately, the Commandant of USMAPS concurred with the EPSBD's discharge recommendation, and the Superintendent of the U.S. Military Academy affirmed the decision. I was informed that because the National Guard was a different component of the U.S. Armed Services, my enlistment into the Army Reserves was considered an initial entry and therefore subject to medical standards regulations applicable to initial entrants–including those related to HIV. As such, I was separated due to my HIV-positive status.

9.     Since the time of my diagnosis, I have maintained an HIV viral load of under 200 copies/mL whether I was taking medication or not. I was informed by my previous infectious disease physician in Connecticut that this likely places me into the category of "elite controllers" of HIV (that is my body can control viral replication without antiretroviral therapy ("ART")), and indicates that I may be a "long-term non-progressor."

10.     Currently, I receive my HIV-related healthcare from the VA health system, at the VA Medical Center in Atlanta, Georgia. In consultation with my medical provider through the Georgia VA healthcare system, I have started on a daily single tablet ART regimen for management of my HIV, which has suppressed my viral load to an undetectable level. As of my last viral load test, I continue to have an undetectable viral load. The Georgia VA healthcare system pays for the expenses associated with my HIV-related healthcare.

11.     If I were allowed to serve, I would be willing to continue taking ART medication

throughout my career in the Army Services.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 29th day of May, 2023.

Respectfully Submitted

Isaiah Wilkins